# EXHIBIT A

FIRM:5132222v1

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE, FLORIDA

PETRINA MARCUS,                                    CASE NO.:

     Plaintiff,

vs.                                                10-35070 CA 24

OUR KIDS OF MIAMI-DADE/MONROE, INC.,

     Defendant.

_____/

**SUMMONS**
(Service on a Corporation)

RM 1599
JUN 2 4 2010
10:50 AM/PM

**THE STATE OF FLORIDA:**
**To each Sheriff of the State:**

     YOU ARE COMMANDED to service this summons and a copy of the complaint or petition in this action on Defendant:

**OUR KIDS OF MIAMI-DADE/MONROE, INC.**

BY SERVING: REGISTERED AGENT,

**CYNTHIA A. EVERETT, P.A.**
**7700 NORTH KENDALL DRIVE, SUITE 703**
**MIAMI, FL 33156 US**

     Each defendant is required to serve written defenses to the complaint or petition on **Erika Deutsch Rotbart,** (Plaintiff's attorney), whose address is **Deutsch Rotbart & Associates, P.A., 4755 Technology Way, Suite 106, Boca Raton, FL 33431, within twenty (20) days** after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiffs' attorney or immediately thereafter.

     If a defendant fails to do so, a default will be entered against that defendant for

1

the relief demanded in the complaint or petition.

(SEAL)                          DATED on _____ JUN 2 3 2010 _____, 2010.


                                CLERK OF THE COURT

                                        CESAR HERNANDEZ
                                By _____
                                        As Deputy Clerk


**Plaintiff's Attorneys:**
DEUTSCH ROTBART & ASSOCIATES, P.A.
4755 Technology Way
Suite 106
Boca Raton, Florida 33431
Telephone:  561.361.8010
Facsimile:   561.361.8086

2

17

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

PETRINA MARCUS

      Plaintiff,

vs.

OUR KIDS OF MIAMI-DADE/MONROE, INC.

      Defendant.
_____/

CASE NO.: 10-35070 CA 24



## COMPLAINT

Plaintiff, PETRINA MARCUS ("MARCUS"), by and through her undersigned

attorney, sues Defendant, OUR KIDS OF MIAMI-DADE/MONROE, INC, ("OUR KIDS")

and states as follows:

## NATURE OF ACTION

1.     This is an action for damages, declaratory and injunctive relief by Plaintiff,

MARCUS against her former employer, Defendant, OUR KIDS. Plaintiff was subjected

to retaliation and material adverse actions in violation of the Florida Public

Whistleblower's Act, Fla. Stat. §112.3187-112.31895 *et seq.* ("FPWA") and Florida's

Private Whistleblower's Act, Fla. Stat. §448.101-103 *et seq.* ("WPA") after she

complained and objected to management of OUR KIDS, both verbally and in writing,

about contract procurement violations under Chapter §287.057, Fla. Stat., and OUR

KIDS failure to follow the liability insurance provisions that applied to OUR KIDS'

subcontractors under Chapter §409.1671, Fla. Stat., and other contract violations under

§409.1671, as a contractor for the State of Florida, Department of Children and Families

("DCF"). In addition, MARCUS engaged in protected activity under the WPA as a result of giving her testimony in an action against OUR KIDS for an alleged violation of the Fair Labor Standards Act ("FLSA"). This is also an action for retaliation under §215(a)(3) of the FLSA, which provides it is a violation "to discharge or in any other manner discriminate against any employee because such employee has testified" in a proceeding under the FLSA.

## JURISDICTION

2.    This is an action for damages in excess of $15,000.00, exclusive of attorneys' fees, interest and costs.

3.    Plaintiff, MARCUS is an individual, *sui juris*, and a resident of Broward County, Florida.

4.    Defendant, OUR KIDS is, and was at all relevant times herein, a domestic not for profit corporation authorized to do business in Miami-Dade County, Florida. OUR KIDS principal business address is 401 NW 2nd Avenue, Miami, Florida 33128. OUR KIDS is an authorized government contractor for the Florida Department of Children and Families ("DCF") under Florida Statutes privatizing DCF social welfare programs.

5.    Jurisdiction and venue is proper in this Court because the incidents, events, actions, and/or omissions giving rise to Plaintiff's claims occurred within this county, specifically in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

6.    OUR KIDS is contracted by DCF to provide community based care to children, youth and families, including but not limited to overseeing coordinated care to

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON  •  FORT LAUDERDALE  •  MIAMI

abused, abandoned and neglected children in Miami-Dade and Monroe Counties for the State of Florida. OUR KIDS contracts with subcontractors to provide direct and indirect services through service contracts for clinical services, shelter and residential care, crisis care and independent living services as well as adoption and foster care services. OUR KIDS delivers all or nearly all of its services through these subcontracted local agencies.

7.     MARCUS began her employment with OUR KIDS in and about July 7, 2006 as a contract management specialist. At that time, she reported to Mia Scornavacca ("Scornavacca"), Director of Contracts. Marcus received a positive performance review on October 17, 2006.  Scornavacca left the employ of OUR KIDS in and about July 2007.

8.     In July 2007, MARCUS had a new supervisor, Evelen Meltz, Director of Quality Assurance.  MARCUS was promoted to Contract Manager also in July 2007. MARCUS continued to receive praise for her work performance.

9.     Shortly thereafter, MARCUS, again, experienced a change in management, and Sonya Milord-Dumbar, Fiscal Monitor, became her direct supervisor.  In and about October or November 2008, Milord-Dumbar rated MARCUS as exceeding expectations in her review of MARCUS' performance.  In January 2009, MARCUS was named Employee of the Quarter for the last quarter of 2008, and commended by Frances Allegra ("Allegra"), the CEO of OUR KIDS. OUR KIDS had not reprimanded or disciplined MARCUS, verbally or in writing, for any reason up through that period of time.

10.     MARCUS began telecommuting under OUR KIDS' policy on or about April

2008, with informal approval from her supervisor Allegra.

11.    In and about December 19 2008, MARCUS began working under a formal telecommuting policy approved by her supervisor to allow her to concentrate her work in a private atmosphere on the delivery of service contracts.   Milord-Dumbar sent a memorandum to Zaira Garcia ("Garcia"), Director of Human Resources, Sonia Benitez, ("Benitez") CFO and Allegra advising them of MARCUS' telecommuting schedule. Under the schedule, MARCUS worked at the OUR KIDS office on Mondays, Wednesdays and Thursdays and from her home on Tuesdays and Fridays, but agreed to come into the office on Tuesdays and Fridays, as necessary, for meetings and other matters.

12.    In and about March 2009, Allegra and Garcia directed MARCUS to testify at a deposition in a lawsuit involving OUR KIDS and a former employee, Sabah Brinson, ("Brinson") (Miami-Dade County Circuit Court, Case No. 07-33595 CA 23) who alleged that OUR KIDS violated the overtime provisions and the exempt classifications of the FLSA.  MARCUS testified at her deposition on March 18, 2009.  On April 27, 2009, MARCUS received a copy of her deposition transcript from OUR KIDS' legal counsel Cynthia Everett, Esquire ("Everett").  Everett had also shared her opinion of MARCUS' testimony with Allegra.

13.    On April 29, 2009, two days after MARCUS received a copy of her deposition transcript, Benitez, without seeking a contract amendment, sought to use money from one of the DCF service programs (SAMH) that was over budgeted for other DCF programs that were under budgeted for the year.  Rather than returning to DCF unused SAMH monies, Benitez advised one of the Clinical Directors, Michelle Montero

("Montero") to go ahead and use the funds for expenses of another program unrelated to SAMH.

14.     On the same day, April 29, 2010, MARCUS advised Benitez, in writing, that she could not legally agree to increase contract funding without an increase in scope of service and a contract amendment.  Benitez rebuffed MARCUS' warning and advised Montero to use the funds immediately before they would have to be return. Unbeknownst to MARCUS and without formally or informally disciplining or reprimanding her, Benitez forwarded MARCUS' written warning not to use the funds without a contract amendment to Garcia and alleged that MARCUS' was undermining management and requested Garcia to place the documentation in MARCUS' employee file.

15.     In May 2009, MARCUS began complaining and objecting to Benitez and Allegra about OUR KIDS failure to follow contract procurement procedures applicable to OUR KIDS and insurance requirements statutorily delineated for subcontractors of OUR KIDS under §287.057, Fla. Stat. and §409.1671, Fla. Stat., respectively.

16.     Allegra and Benitez were aware by July 2009 that OUR KIDS was not in compliance with the procurement procedures and that subcontractors lacked liability insurance that applied to OUR KIDS pursuant to the Florida laws mentioned above in paragraph 21.  Specifically, on July 2, 2009, MARCUS sent proposed contract language to Allegra and Benitez to rectify the liability insurance non-compliance.

17.     On July 2 and July 9, 2009, MARCUS advised Benitez and Allegra which contracts did not comply and requested that they follow the procurement laws and post such contracts for competitive bid going forward; and on July 27, 2009, MARCUS,

again, in writing, advised that the insurance and procurement provisions of the law were not in compliance at OUR KIDS. Despite their actual knowledge, Benitez and Allegra continued to delay complying with the law for many months by insisting that some loophole or exception might apply to certain service contracts of OUR KIDS.

18.    In fact, on July 9, 2009, Allegra admitted to management of OUR KIDS that all contracts should be sent out for competitive bids unless she "made an exception."

19.    In and about July 10, 2009, Milord-Dumbar was relieved of all supervision responsibilities with respect to MARCUS, but not her responsibilities as Contract Director.

20.    In June and July 2009, Allegra and Benitez, again, without formally or informally reprimanding MARCUS and without MARCUS' knowledge, forwarded some negative e-mails to Garcia to be placed in MARCUS' employee file. In July 2009, Allegra also proposed to Garcia and Benitez that MARCUS be put on a performance improvement plan although it was not implemented.

21.    In August 2009, feeling that Allegra and Benitez were being hostile to her complaints, MARCUS complained to Allegra, Benitez and Garcia that she felt that she was being retaliated against for giving testimony in the Brinson case and for complaining and objecting to the noncompliance of OUR KIDS contracts with the procurement and liability insurance provisions of the laws governing DCF contractors.

22.    Ignoring MARCUS' complaints and the law, in and about September 2009, Allegra directed MARCUS to immediately establish a contract for $65,000 annually with Citrus Health Network without a competitive bid process in violation of under §287.057,

6

Fla. Stat., which requires that contracts exceeding $25,000 annually be competitively bid. Maria Alonso, COO of Citrus Health Network, Inc. who negotiated the contract, at all relevant times was a member of The Children's Trust board of directors, and a partner of OUR KIDS, at the time Allegra directed MARCUS to prepare the contract. The Children's Trust is a Miami-Dade County political subdivision that provides public funding for children's services.

23.    On September 30, 2009, MARCUS advised Milord-Dumbar that FCMA and SAMH and other OUR KIDS contracts were being extended and new contracts were requested by Allegra without proper protocols concerning performance measures in the contract that are required by the DCF privatization law.  After speaking with MARCUS, Milord-Dumbar advised Benitez, in writing, that she was very concerned about these omissions and the timeline for the completion of the contracts.

24.    On October 7, 2009, MARCUS, again, in writing raised her concerns to Milord-Dumbar about OUR KIDS lack of compliance with the liability insurance provisions of the law with regard to subcontractors. On October 8, 2009, MARCUS was advised by OUR KIDS legal counsel, Everett, that the liability insurance provisions of §409.1671, Fla. Stat. without a doubt applied to OUR KIDS subcontractors; and that if they did not comply with the liability insurance provisions of the law, then the subcontractors would not be able to provide direct services or related services for OUR KIDS.

25.    In and about November 6, 2009, Benitez and Allegra, despite information to the contrary, took the position that certain subcontractors of OUR KIDS were not subject to the liability insurance provisions of the law and directed MARCUS and other

7

employees to assist in drafting language to advise DCF of the same. On November 13, 2009, DCF also advised Milord-Dumbar and MARCUS that the liability insurance provisions applied to all direct and related services.

26.    In and about May to November 2009, MARCUS was also working with OUR KIDS outside certified public accountants, Abel CPA, to draft legally acceptable procurement policies for OUR KIDS.

27.    On Friday, November 13, 2009, in accordance with her telecommuting privileges approved in December 2008, MARCUS worked remotely from her home. Milord-Dumbar was fully aware that MARCUS was working from home on that day and had even planned to meet her for lunch for a business meeting.  During the lunch meeting, Milord-Dumbar told MARCUS that she had completed MARCUS' performance review and that Allegra and Benitez had provided direct and unfavorable feedback on her performance.  Not only was MARCUS review overdue, since it was normally given in July, but Allegra and Benitez had never been involved in the evaluation process regarding MARCUS in the past.  Milord-Dumbar told MARCUS that she was surprised by it and had met with Allegra and Benitez and requested that they be fair to MARCUS.

28.    On November 16, 2009, Benitez, despite being fully aware that MARCUS was still telecommuting, claimed that she was looking for MARCUS on November 13, 2009 at the offices of OUR KIDS and could not find her.  Evidently, she made no attempt to contact MARCUS by phone.  Milord-Dumbar met with Benitez and Garcia regarding this allegation, and Garcia and Benitez told her that they were considering terminating MARCUS, and that MARCUS was no longer allowed to telecommute. Neither Milord-Dumbar nor anyone else from OUR KIDS had previously advised

MARCUS that she was no longer permitted to telecommute.

29.     Later that same day, November 16, 2009, Milord-Dumbar and Garcia met with MARCUS and told her that she could no longer telecommute and MARCUS also learned for the first time that Allegra and Benitez had forwarded to Garcia for her personnel file the negative e-mails discussed above. MARCUS also addressed her concern to be protected as a whistleblower in this meeting in light of all that she had communicated to OUR KIDS management about the contracting, procurement, and insurance issues and the fact that she was being subjected to retaliation for making these complaints.

30.     After learning that Allegra and Benitez were retaliating against her in this meeting on November 16, 2009 in the meeting with Garcia, MARCUS immediately sent Garcia an e-mail, which she copied to three members of OUR KIDS board of directors, requesting protection as a whistleblower and requesting to file a grievance pertaining to the decision and negative performance allegations pursuant to OUR KIDS' policies. After a conversation with Garcia and Everett in which she advised them of her allegations of violations of the procurement and liability insurance provisions of the statutes, Garcia immediately placed MARCUS on administrative leave from OUR KIDS and told her not to return to the facility or to represent OUR KIDS in any matters.

31.     On November 17, 2009, Benitez contacted OUR KIDS certified public accountants, Abel CPA and told them that MARCUS was placed on leave and asked them to issue "an opinion" about MARCUS allegations regarding the procurement policies.

32.     On November 18, 20 and 30, 2009, MARCUS requested the reasons why

9

she was placed on administrative leave and also requested a copy of her personnel file. OUR KIDS neither provided the reasons for her leave, nor did they give her a copy of her personnel file.

33.    Instead, on December 4, 2009, MARCUS received a severance agreement and release delivered to her home address from Garcia on behalf of OUR KIDS purporting to separate her employment in exchange for a general and full release.

34.    On December 16, 2009, MARCUS received a hand-delivered letter from OUR KIDS legal counsel, Michael Casey, Esquire ("Casey"), stating that she could return to work or accept the severance agreement. Casey also requested that MARCUS send a letter to Carlos de la Cruz ("de la Cruz"), OUR KIDS Board Chairman, to provide the entire basis for her whistleblower/retaliation claims to the board of directors.

35.    At no time, however, was MARCUS advised as to the reasons she was placed on administrative leave.

36.    On December 22, 2009, MARCUS decided to return to work rather than accept the severance agreement. At that same time, MARCUS also complied with Casey's request for information about her claims, which she put in writing to de la Cruz and Casey, despite the fact that Marcus had previously put her complaints in writing to OUR KIDS during the prior months.

37.    On January 4, 2009, MARCUS returned to work and was now assigned to work under Benitez's direction, who had retaliated against her, with decreased and limited responsibilities.

38.    In and about December 2009 or January 2010, MARCUS requested that the Inspector General investigate her allegations pertaining to OUR KID's

10

noncompliance with procurement laws and the liability insurance provisions of the statutes. DCF's Inspector General's investigation is currently ongoing.

39.    On December 29, 2009, MARCUS also duly filed a whistleblower complaint with the Office of the Governor of the State of Florida pursuant to §112.3187.

40.    On February 16, 2010, the Deputy Inspector General of the Office of the Governor found that there was reasonable cause for an investigation of OUR KIDS under the statute, and that the information disclosed by MARCUS qualified her for protection as a whistleblower.

41.    After MARCUS received the reasonable cause notice, on February 17, 2010, the next day, Allegra issued a memorandum to MARCUS concerning her performance. In the memorandum, Benitez reflected the blame for contract deficiencies to MARCUS and accused MARCUS of allowing certain contracts expire. Interestingly, the contracts' expiration had occurred just prior to MARCUS was placed on administrative leave, and Milord-Dumbar or other employees were responsible for handling the expirations in her absence. MARCUS had only returned to work less than five weeks earlier.

42.    In March 2010, Benitez severely reduced MARCUS' responsibilities to monitoring subcontractors and developing contract training documents and templates. Then, on April 13, 2010, OUR KIDS terminated MARCUS alleging that it was "restructuring". The very certified public accountants that she complained to in May and November 2009 about the procurement policies alleged that the contract files were not properly maintained; that contracts had expired and that there was a lack of confidence in her performance.

43.    On March 22, 2010, more than three (3) months after her complaints to the board directors and almost 10 months after MARCUS first raised the issues, OUR KIDS legal counsel, Casey received a completed in-house investigation report of MARCUS' allegations. The self-serving investigation contrary to the one conducted by the Deputy Inspector General of the Office of the Governor in February 2010 found no cause for MARCUS' whistleblower complaint. DCF did not participate in OUR KIDS investigation because it is conducting its' own ongoing investigation. Milord-Dumbar refused to speak to OUR KID's investigator or to participate in the investigation in any way.   The completion of the Deputy Inspector General's investigation of OUR KIDS also is pending.

### COUNT I
### VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT

44.    This is an action for declaratory/injunctive relief and damages based upon violation of the Florida Private Whistleblower's Act, Fla. Stat. §448.101-103 *et seq.* ("WPA").

45.    Plaintiff reasserts all of the general allegations set forth above and incorporates the same herein by this reference.

46.    The WPA, pursuant to §448.102(3), prohibits an employer from taking a retaliatory personnel action against an employee because the employee has objected to, or refused to participate in, any activity, policy or practice of the employer, which is in violation of any law, rule or regulation.   The conduct of OUR KIDS' management violated Florida Statutes, §409.1671 and §287.057 concerning competitive bid procurement and contract requirements for contractors of children's services under the privatization of DCF. Furthermore, Plaintiff objected to being retaliated against because

DEUTSCH ROTBART ... ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

she testified in the Brinson FLSA case. Pursuant to the FLSA, employers are prohibited from retaliating against witnesses who testify in proceedings under the FLSA.

47.    At all material times, Defendant was Plaintiff's employer as defined under the WPA.

48.    Plaintiff engaged in statutorily protected conduct within the meaning of the WPA when she objected to OUR KIDS not complying with the liability insurance provisions of the privatization statute and not following the competitive bid process among other complaints about OUR KIDS' contracts that violated §409.1671.

49.    Plaintiff's statutorily protected conduct under the WPA was a motivating cause of Defendant's decision to terminate Plaintiff and to take material adverse actions against her after she engaged in protected conduct, namely, placing negative comments in her employee file; reprimanding her for telecommuting; placing her on administrative leave; diminishing her responsibilities; attempting to force her to resign; disciplining her; and ultimately terminating her employment.

50.    As a result of Defendant's violation of the WPA, Plaintiff has been damaged.

51.    Plaintiff is entitled to recover her attorneys' fees under §448.104, Florida Statutes.

WHEREFORE, Plaintiff prays for judgment against Defendant, OUR KIDS, and for declaratory and injunctive relief and/or damages, including lost wages, lost benefits, compensatory damages, front pay or reinstatement, attorneys' fees, costs, and such other and further relief as the Court may find is just, necessary and proper.

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON  •  FORT LAUDERDALE  •  MIAMI

**COUNT II**
**VIOLATION OF FLORIDA'S PUBLIC WHISTLEBLOWER'S ACT**

52. This is an action for declaratory/injunctive relief and damages based upon violation of the Florida Public Whistleblower's Act, Fla. Stat. §112.3187-112.31895 et seq. ("FPWA").

53. Plaintiff reasserts the general allegations set forth above and incorporate the same herein by this reference.

54. The FPWA pursuant to §112.3187(4) prohibits an public agency or independent contractor in the role of the public agency, from taking a retaliatory personnel action against an employee because the employee has disclosed information pursuant to the FPWA §112.3187(5), which includes any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor and which creates and presents a substantial and specific danger to the public's health, safety, or welfare or any act or a suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

55. At all times material to this action OUR KIDS was an independent contractor contracted to provide children's services on the behalf of DCF, with public funding, through subcontractors under the privatization of said services by Florida Statutes, §409.1671. At all times material to this action, MARCUS was an employee of OUR KIDS as defined by FPWA.

56. The conduct of OUR KIDS' management violated Florida Statutes, §409.1671 and §287.057 concerning competitive bid procurement and contract

14

requirements for contractors of children's services under the privatization of DCF. Plaintiff disclosed by written complaints to her supervisory officials on several occasions over a ten or more month period the violations of the statutes; filed a written complaint with DCF and filed a written complaint with Chief Inspector General in the Office of the Governor pertaining to the violations of the statutes.

57.     The violations that Plaintiff complained of presented a substantial risk to the welfare of the children that DCF is charged to protect and also implicates the gross mismanagement; malfeasance and misfeasance standards of the FPWA since OUR KIDS' management failed to competitively bid contracts, which could result in the diminished quality of the social services provided to Florida's children, and resulted in poor financial decision-making and decision-making that violated the law.

58.     Plaintiff engaged in statutorily protected conduct within the meaning of the FPWA when she complained, in writing, about OUR KIDS not complying with the liability insurance provisions of the privatization statute and not following the competitive bid process among other complaints (i.e. failure to amend contracts, use of public funds for one contract for another contract without proper approvals).

59.     Plaintiff's statutorily protected conduct under the FPWA was a motivating cause of Defendant's decision to terminate Plaintiff and to take material adverse actions against her after she engaged in protected conduct, namely, placing negative comments in her employee file; reprimanding her for telecommuting; placing her on administrative leave; diminishing her responsibilities; attempting to force her to resign; disciplining her; and ultimately terminating her employment.

DEUTSCH ROTBART ·   ASSOCIATES, P.A.
BOCA RATON  •  FORT LAUDERDALE  •  MIAMI

60.     As a result of Defendant's violation of the FPWA, Plaintiff has been damaged.

61.     Plaintiff is entitled to recover her attorneys' fees under §112.3187(8).

WHEREFORE Plaintiff prays for declaratory and injunctive relief and/or damages against Defendant, OUR KIDS, and for damages, including lost wages, lost benefits, compensatory damages, front pay or reinstatement, attorneys' fees, costs, and such other and further relief as the Court may find is just, necessary and proper.

## COUNT III
## VIOLATION OF THE FLSA, §215(a)(3)

62.     This is an action for damages, including liquidated damages, based upon Defendant's violation of the FLSA.

63.     Plaintiff reasserts the general allegations set forth above and incorporate the same herein by this reference.

64.     At all times material to this action, Plaintiff was an employee as defined by the FLSA.

65.     At all times material to this action, Defendant was an employer as defined by the FLSA.

66.     Plaintiff engaged in protected activity under the FLSA when she testified in the Brinson case, which alleged that OUR KIDS violated the overtime provisions and the exemption classifications of the FLSA.  Plaintiff also objected to being retaliated against because she testified in the Brinson FLSA case.

67.     Pursuant to the FLSA, employers are prohibited from retaliating against witnesses who testify in proceedings brought under the FLSA.

16

68.     Because of Plaintiff's statutorily protected conduct under the FLSA, Defendant took materially adverse actions against her, namely, placing negative comments in her employee file; reprimanding her for telecommuting; placing her on administrative leave; diminishing her responsibilities; attempting to force her to resign; disciplining her; and ultimately terminating her employment.

69.     As a result of Defendant's violation of the FLSA, Plaintiff has been damaged.

70.     Plaintiff is entitled to recover her attorneys' fees under the FLSA.

71.     Defendant's conduct was wanton, malicious and intentional and Plaintiff is also entitled to liquidate her damages under the FLSA for that reason.

WHEREFORE, Plaintiff prays for judgment against Defendant, OUR KIDS, and for any and all damages, including lost wages, liquidated damages, attorneys' fees, costs, and such other and further relief as the Court may find is just, necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, MARCUS demands trial by jury for all issues so triable by right of jury under state or federal law.

Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
4755 Technology Way
Suite 106
Boca Raton, Florida 33431
Telephone:  561.361.8010
Facsimile:   561.361.8086
Email:  edrotbart@dralawfirm.com

BY: _____
     Erika Deutsch Rotbart, Esq.
     Florida Bar No.: 0047686

17

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI